IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| V. | § | No. 3:09-cr-136-E (01) |
| | § | |
| JEFFREY CHARLES BRUTEYN, | § | |
| | § | |
| Defendant. | § | |

## **MEMORANDUM OPINION AND ORDER**

Defendant Jeffrey Charles Bruteyn moves the Court for compassionate release and to therefore reduce his sentence to time served under 18 U.S.C. § 3582(c)(1)(A)(i). *See* Dkt. Nos. 282, 283, 288. The government filed a court-ordered response. *See* Dkt. Nos. 287, 289-91. And Bruteyn replied and supplemented. *See* Dkt. Nos. 292-99.

The Court **DENIES** Bruteyn's motion for the following reasons.

## **Applicable Background**

Focusing just on this criminal case, as summarized by the United States Court of Appeals for the Fifth Circuit, Bruteyn, who "sold investors secured debt obligations ('SDOs') based on the loans his company made to used-car purchasers," "misrepresented his credentials and insurance coverage on the investments and marketed his investment offerings as though they were as safe as FDIC-backed certificates of deposit." *United States v. Bruteyn*, 686 F.3d 318, 320-21 (5th Cir. 2012). More specifically,

> Bruteyn managed AmeriFirst Funding, Inc. ("AmeriFirst"), a Dallas-area corporation that financed used-car purchases. To raise capital, AmeriFirst sold SDOs based on its loans to car buyers.
>
> To sell SDOs, Bruteyn produced promotional materials that understated investor risk and overstated insurance coverage. He used a

network of brokers to lure investors with the false promise that the SDOs were as safe as FDIC-insured certificates of deposit. He falsely told investors that he had an M.B.A. from the Wharton School of Business and a J.D. from Baylor Law School and that his family owned Hess Corporation and would cover investor losses. He also failed to disclose to investors his expulsion from the National Association of Securities Dealers....

The Securities and Exchange Commission [ ] instituted an emergency enforcement action against AmeriFirst and obtained a temporary restraining order [ ] freezing its assets. Of the $58.7 million invested in AmeriFirst, only $34.1 million had been returned to investors at the time of sentencing.

Bruteyn was indicted for securities fraud and represented himself at trial. A jury convicted him on all nine counts, and the district court sentenced him to twenty-five years in prison, three years' supervised release, and almost $7.3 million in restitution.

*Id.* at 321.

His conviction and sentence were affirmed on direct appeal. *See generally id.*

Bruteyn's motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255, filed with the assistance of counsel, was denied. *See Bruteyn v. United States*, No. 3:13-cv-1465-M-BK, 2014 WL 1022580 (N.D. Tex. 2014), *C.O.A. denied*, No. 14-10421 (5th Cir. Oct. 16, 2014), *cert. denied*, 135 S. Ct. 1470 (2015).

The district court then denied his *pro se* motion for relief from judgment under Federal Rule of Civil Procedure 60(b). *See United States v. Bruteyn*, No. 3:09-cr-136-M-01, 2017 WL 9856241 (N.D. Tex. Nov. 13, 2017).

Again proceeding *pro se*, Bruteyn first sought compassionate release under § 3582(c)(1)(A) in April 2020, and the Court denied his motion without prejudice for failure to exhaust administrative remedies and, in the alternative, for failure to specify facts unique to his circumstances to justify relaxing the exhaustion requirements considering the COVID-19 pandemic. *See* Dkt. Nos. 275, 276; *see also*

Dkt. Nos. 277-280 (denying two requests for reconsideration).

Bruteyn moved again for compassionate release in February 2022, this time with the assistance of counsel, arguing in sum that "[d]evelopments after [his] conviction and sentencing raise significant doubts about [his] culpability and the fairness of his conviction and sentence"; that, "[w]hile [he] has been unable to have these issues considered in his postconviction proceedings for procedural reasons, the First Step Act's expansion of the Court's compassionate release authority provides the Court with an alternative mechanism to address these significant issues"; that he "has also demonstrated an extraordinary degree of rehabilitation in the years he has been incarcerated"; that he "elderly mother is in poor health, and [his] release would allow him to provide her with the care she needs"; and that he "is not a danger to the community and reducing his sentence is consistent with the sentencing factors set forth in 18 U.S.C. Section 3553(a)." Dkt. No. 282 at 1.

## Legal Standards

A district court lacks inherent authority to modify a defendant's sentence after it has been imposed. *See* 18 U.S.C. § 3582(c).

But, under § 3582(c)(1)(A), as amended by the First Step Act (the FSA), "[a] court, on a motion by the BOP or by the defendant after exhausting all BOP remedies, may reduce or modify a term of imprisonment, probation, or supervised release after considering the factors of 18 U.S.C. § 3553(a), if 'extraordinary and compelling reasons warrant such a reduction.'" *United States v. Chambliss*, 948 F.3d 691, 692-93 (5th Cir. 2020) (quoting § 3582(c)(1)(A)(i)); *see id.* at 693 n.1.

- 3 -

> [A] prisoner seeking compassionate release must overcome three hurdles. First, "extraordinary and compelling reasons" must justify the reduction of his sentence. Second, the reduction must be "consistent with applicable policy statements issued by the Sentencing Commission." Finally, the prisoner must persuade the district court that his early release would be consistent with the sentencing factors in 18 U.S.C. § 3553(a).

*United States v. Jackson*, 27 F.4th 1088, 1089 (5th Cir. 2022) (citations omitted).

Congress failed to define "extraordinary and compelling reasons" in this context, leaving "that task to the Sentencing Commission, though Congress did insist that '[r]ehabilitation of the [prisoner] alone' cannot justify a reduced sentence." *Id.* at 1090 (quoting 28 U.S.C. § 994(t); citing *United States v. Shkambi*, 993 F.3d 388, 390-91 (5th Cir. 2021)).

Through its commentary to U.S.S.G. § 1B1.13, the Sentencing Commission "'articulate[s] four categories of 'extraordinary and compelling reasons' that could warrant a sentence reduction: (A) medical conditions of the defendant; (B) age of the defendant; (C) family circumstances; and (D) other reasons' identified by the Bureau [of Prisons] Director." *Id.* (quoting *Shkambi*, 993 F.3d at 391 (citing, in turn, U.S.S.G. § 1B1.13 cmt. n.1)).

"But the Commission apparently did not anticipate that Congress would allow prisoners to file compassionate-release motions," as § 1B1.13 "repeatedly states that it governs *the Bureau's* compassionate-release motions." *Id.* (citing *Shkambi*, 993 F.3d at 392).

Consequently, "§ 1B1.13 is not an 'applicable policy statement' to compassionate release motions filed by prisoners, [so] 'neither the policy statement nor the commentary to it binds a district court addressing a prisoner's own motion

- 4 -

under § 3582.'" *United States v. Cooper*, 996 F.3d 283, 288 (5th Cir. 2021) (quoting *Shkambi*, 993 F.3d at 392-93); *see also United States v. Rodriguez*, 27 F.4th 1097, 1099-1100 (5th Cir. 2022) ("There is little developed guidance on what constitutes extraordinary and compelling reasons for a sentence reduction because neither § 3582 nor the Guidelines fully define or limit those reasons." (citing *Shkambi*, 993 F.3d at 391-92)).

"Even so, Section 1B1.13 may 'inform[ ]' the district court's analysis." *Jackson*, 27 F.4th at 1090 (quoting *United States v. Thompson*, 984 F.3d 431, 433 (5th Cir. 2021) (citing, in turn, *United States v. Rivas*, 833 F. App'x 556, 558 (5th Cir. 2020) (per curiam))); *see also United States v. Rucker*, No. 21-40204, 2021 WL 5627064, at *1 (5th Cir. Nov. 30, 2021) (per curiam) ("Reliance on § 1B1.13 merely as guidance [is] not error." (citing *Thompson*, 984 F.3d at 433)).

And, where a defendant does proffer a reason for a reduction that the Court—no longer bound by § 1B1.3—finds to be extraordinary and compelling, that alone is not a basis to reduce a sentence. The defendant still must convince the Court "to exercise discretion to grant the motion for compassionate release after considering the Section 3553(a) factors." *Ward*, 11 F.4th at 361 (cleaned up; quoting *Shkambi*, 993 F.3d at 392). *Cf. Thompson*, 984 F.3d at 433 & n.2 (affirming denial of compassionate release motion just on the district court's determination that no extraordinary and compelling reasons warranted release).

In fact, "[t]he district court's conclusion that the § 3553(a) factors do not merit relief is both dispositive of the matter and unaffected by [the] ruling in *Shkambi*"—

allowing an expanded scope as to what reasons may be considered extraordinary and compelling. *United States v. Simon*, No. 21-30057, 2021 WL 4782790, at *1 (5th Cir. Oct. 13, 2021) (per curiam) (citing *United States v. Shorter*, 850 F. App'x 327, 328 (5th Cir. 2021) (per curiam)); *see also United States v. Hernandez*, No. 21-10753, 2022 WL 1303084, at *1 (5th Cir. May 2, 2022) (per curiam) (refusing to consider a defendant's challenge to the district court's "determination that he was not entitled to relief because he failed to show extraordinary and compelling reasons justifying his release" where the "district court's weighing of the § 3553(a) factors 'independently support[s] its judgment'" (quoting *Jackson*, 27 F.4th at 1093 n.8; citing *Ward*, 11 F.4th at 360-62; *Chambliss*, 948 F.3d at 693-94)); *United States v. Rios*, No. 21-10371, 2022 WL 4355146, at *1 (5th Cir. Sept. 20, 2022) (per curiam) ("To the extent Rios disagrees with the district court's balancing of the § 3553(a) factors, his disagreement does not warrant reversal." (citing *Chambliss*, 948 F.3d at 694)). *Cf. Ward*, 11 F.4th at 360 ("[M]otions for compassionate release are inherently discretionary.").

## Discussion

Bruteyn primarily seeks to use Congress's expansion of the compassionate release statute to legally attack his criminal judgment on grounds that, prior to the FSA, a defendant could only raise through a motion under § 2255, which generally prohibits second or successive motions.

On reply, for example, he argues that

[s]everal important factual and legal matters have come to light that support a reduction in [his] sentence, including evidence relating to both his level of culpability and his mental health condition at the time of trial. This includes evidence in the Special Receiver litigation showing

- 6 -

> that [his] conduct in this case was the result of the advice of counsel.
> [His] offense of conviction requires knowledge and willfulness, and the
> operative statute specifically provides that incarceration is not
> appropriate for unknowing violations. [He] and his co-defendants
> retained "a well-known securities attorney with an excellent reputation"
> who was part of "a well-known law firm with an excellent reputation" to
> assist and advise them "in all aspects of properly preparing and legally
> offering, without illegally advertising or soliciting, securities for sale to
> the public," which included ensuring their offering "complied with all
> state and federal securities laws." That important context should weigh
> heavily in evaluating [his] culpability, but it was unknown to the jury
> that convicted him and to the sentencing judge. Additionally, at the time
> [he] represented himself at trial in this complex matter, he was seriously
> mentally ill and suicidal. Again, this information was unknown to the
> Court when it granted [his] request to represent himself, during his
> trial, or at sentencing. [He] and his family have been unsuccessful in
> having these issues considered in prior postconviction proceedings for
> procedural reasons.

Dkt. No. 294 at 2-3 (citations omitted).

Bruteyn further asserts that he is not procedurally barred from raising these
grounds now because they have not been considered on their merits and that,
particularly post-*Shkambi*, there is authority to broadly consider what may
constitute extraordinary and compelling, such that the legal issues he raises now
(even if not supported by new evidence), when considered on their merits, in
combination with his claimed rehabilitation and the need for him to care for his
mother and brother, constitute extraordinary and compelling reasons for his
compassionate release. *See generally, e.g.*, Dkt. No. 294.

As set out above, *Shkambi* held that neither "the old pre-FSA statement that
appears in § 1B1.13" "nor the commentary to its binds a district court addressing a
prisoner's own motion under § 3582." 993 F.3d at 392-93. So, when a defendant files
a motion for compassionate release, because an applicable policy statement is lacking,

district courts in this circuit may consider—but are not constrained by—the Guidelines when determining what may constitute extraordinary and compelling reasons.

And, after *Shkambi*, some district courts in this circuit have held that non-retroactive changes in sentencing law—specifically changes the FSA made to how sentences for convictions under 18 U.S.C. § 924(c) are served—may constitute an extraordinary and compelling reason. *See, e.g.*, *United States v. Rainwater*, No. 3:94-CR-042-D(1), 2021 WL 1610153, at *1-*2 (N.D. Tex. Apr. 26, 2021); *see also United States v. Reed*, No. 3:13-cr-481-B-5, 2022 WL 198405, at *3 (N.D. Tex. Jan. 21, 2022) (observing that "the Fifth Circuit has not decided whether nonretroactive changes to sentencing laws may constitute extraordinary and compelling reasons for compassionate release and that courts in this circuit have reached conflicting answers" (citations omitted)). *Cf. United States v. Chen*, 48 F.4th 1092, 1096-98 (9th Cir. 2022) (discussing the current circuit split as to whether "district courts may consider non-retroactive changes in sentencing law, in combination with other factors particular to the individual defendant, when analyzing extraordinary and compelling reasons for purposes of § 3582(c)(1)(A)").

Relatedly, § 404 of the FSA retroactively extended changes to sentencing law made by the Fair Sentencing Act of 2010. And, last term, the United States Supreme Court held that, when calculating a sentence modification under § 404, a district court must consider "intervening changes of law and fact … when parties raise them" but that the FSA "does not compel courts to exercise their discretion to reduce any

sentence based on those arguments." *Concepcion v. United States*, 142 S. Ct. 2389, 2396 (2022); *see also id.* at 2404-05 ("Put simply, the First Step Act does not require a district court to accept a movant's argument that evidence of rehabilitation or other changes in law counsel in favor of a sentence reduction, or the Government's view that evidence of violent behavior in prison counsels against providing relief. Nor does the First Step Act require a district court to make a point-by-point rebuttal of the parties' arguments. All that is required is for a district court to demonstrate that it has considered the arguments before it.").

Insofar as *Concepcion* may be applied to motions under § 3582,[1] it could be read to "support [a] conclusion that a district court's discretion in sentence modifications is limited only by an express statement from Congress." *Chen*, 48 F.4th at 1095 n.3. And, so read, *Concepcion* may reinforce *Shkambi*'s conclusion that, at least right now, the Guidelines are not an express limitation on a district court when a prisoner files his own motion for compassionate release. *See United States v. King*, 40 F.4th 594,

---

[1] *But see United States v. Thompson*, No. 4:98-CR-64-SDJ, 2022 WL 2704167, at \*2 & n.4 (E.D. Tex. July 12, 2022) (finding that "*Concepcion* is not applicable" to such a motion, because, "in *Concepcion* the Supreme Court contrasted proceedings under Section 3582(c)(1)(A), as amended by Section 603(b) of the First Step Act, with Section 404 proceedings, noting that in Section 3582(c)(1)(A) Congress 'expressly cabined district courts' discretion [to grant compassionate release] by requiring courts to abide by the Sentencing Commission's policy statements'" (quoting *Concepcion*, 142 S. Ct. at 2401)); *United States v. Bryant*, No. 22-10638, 2022 WL 4372553, at \*3 (11th Cir. Sept. 22, 2022) (per curiam) ("Importantly, the *Concepcion* opinion states that Congress may cabin what district courts may consider when sentencing (or resentencing) a defendant, and it expressly cited the compassionate release statute as an example: 'For [§ 3582(c)] proceedings, Congress expressly cabined district courts' discretion by requiring courts to abide by the Sentencing Commission's policy statements.'" (citation omitted)).

596 (7th Cir. 2022) ("We take the Supreme Court at its word that *Concepcion* is about the matters that district judges may consider when they resentence defendants. So understood, *Concepcion* is irrelevant to the threshold question whether any given prisoner has <u>established</u> an 'extraordinary and compelling' reason for release." (emphasis added)).

Against the framework—and thus not constrained by the Guidelines—the Court has considered Bruteyn's proffered reasons and finds that they are not extraordinary and compelling.

As some judges in this district have held, watershed changes in sentencing law not expressly made retroactive by Congress, such as the FSA's alterations to § 924(c), may constitute an extraordinary and compelling reason to allow a prisoner to pass through § 3582(c)(1)(A)'s first gate. *See, e.g., Rainwater*, 2021 WL 1610153, at *2 ("The court begins by reaching the preliminary conclusion that there are extraordinary and compelling reasons to reduce Rainwater's sentence. Although subject to further scrutiny under the factors of 18 U.S.C. § 3553(a), this conclusion is based on a straightforward premise: It appears facially unjust that a defendant like Rainwater has received a sentence that is decades longer than what Congress now deems warranted, as evidenced by its adoption of the First Step Act.").

But Bruteyn's motion is not based on such changes. His motion is not based on a facial injustice. His motion is instead grounded first on legal attacks to the criminal judgment, attacks previously made but not addressed on their merits. And—absent some facial injustice that could be caused by failing to consider watershed changes in

the law, *e.g.*, *Rainwater*—the Court agrees with the Seventh Circuit that such attacks are "the ordinary business of the legal system" and, as such, "should be addressed by direct appeal or collateral review under 28 U.S.C. § 2255." *King*, 40 F.4th at 595 (citing *United States v. Martin*, 21 F.4th 944 (7th Cir. 2021)); *see also United States v. Warner*, No. 3:11-cr-233-X (01), 2021 WL 3861239, at *3 (N.D. Tex. Aug. 27, 2021) ("[C]onsidering legal arguments cloaked as extraordinary and compelling reasons under Section 3582(c)(1)(A)"—particularly arguments that are otherwise long foreclosed—"'would allow the compassionate release statute to operate in a way that creates tension with the principal path and conditions Congress established for federal prisoners to challenge their sentences.'" (quoting *United States v. Thacker*, 4 F.4th 569, 575 (7th Cir. 2021) (That "path is embodied in the specific statutory scheme authorizing post-conviction relief in 28 U.S.C. § 2255 and accompanying provisions." (citation omitted)))).

Nor is the Court persuaded that the attacks on the criminal judgment in combination with Bruteyn's claimed rehabilitation and the need for him to care for his mother and brother constitute an extraordinary and compelling reason.

As to family circumstances, the Court finds that, while the Guidelines are not binding, they inform the Court's analysis, *Jackson*, 27 F.4th at 1090; *Thompson*, 984 F.3d at 433; *Rivas*, 833 F. App'x at 558; *Rucker*, 2021 WL 5627064, at *1, such that the record before it does not show that release is justified due to the death or incapacitation of the caregiver of Bruteyn's minor child or because he would be the only available caregiver for his spouse or partner. *See* U.S.S.G. § 1B1.13 cmt. n.1(C);

*United States v. Broach*, No. 3:17-cr-17-B-8, 2022 WL 4111874, at *3 (N.D. Tex. Sept. 8, 2022) (concluding that, "[w]hile the Court sympathizes with Broach's commendable desire to take care of his mother, the Court—considering the guidance of § 1B1.13 and applying its discretion—finds that Broach's family circumstances do not establish an extraordinary and compelling reason for compassionate release")

That leaves rehabilitation. But "'[r]ehabilitation of the [prisoner] alone' cannot justify a reduced sentence." *Jackson*, 27 F.4th at 1090 (quoting § 994(t)).

The Court's conclusion that no extraordinary and compelling circumstance opens the door to its consideration of Bruteyn's motion for compassionate release is alone enough to deny the motion. *See Thompson*, 984 F.3d at 433 & n.2. But the Court further concludes that Bruteyn fails to show that the applicable § 3553(a) factors merit relief.

The undersigned neither presided over Bruteyn's trial nor sentenced him. But, in considering the motion for compassionate release, the Court has carefully reviewed the voluminous record—in particular, the transcript of the three-day sentencing in March 2011. *See* Dkt. Nos. 238, 239, 240.

At the conclusion of Bruteyn's sentencing, United States District Judge Barbara M. G. Lynn first observed that, "countless times," Bruteyn "told [her] something that [was] not accurate"; that he lacked "any appreciation for the adverse [effects] of [his] own conduct"; that he is "a con man," who "tricked and defrauded people over a period many years"; and that he exhibited a "holier-than-thou attitude that … is just preposterous." Dkt. No. 240 at 76, 77; *see also id.* at 78 ("I just find your

remarks, your attitude, your assessment of your own conduct, culpability, lack of remorse, to be completely inappropriate.").

And, before imposing the 300-month sentence, Judge Lynn specifically addressed the § 3553(a) factors. *See id.* at 78-80 (finding the offense to very serious, such that the offense, in combination with Bruteyn's characteristics "compel[led] the Court to impose a substantial sentence" to "justly punish" and "deter [Bruteyn] from future criminal conduct"); *see also id.* at 79 ("Given your attitude, if you came out in a year, I think that you would be committing fraud, because I think that you are frankly either incapable of ascertaining the difference between truth and falsity, or unwilling to accept that there is a difference between truth and falsity").

Bruteyn now urges the Court to consider, among other things, that he has served 13 years of his 25-year sentence—which he argues is more than sufficient punishment; that his history and characteristics (specifically his age, education, and conduct while incarcerated) reflect that he will not recidivate nor is he a danger to the community; that a reduction will avoid unwarranted sentencing disparities, considering his co-defendant, Dennis Bowden; and that, when he was sentenced to 25 years of imprisonment, the harshness of being incarcerated during the COVID-19 pandemic could not have been anticipated. *See, e.g.*, Dkt. No. 282 at 22-25.

The government counters that Judge Lynn's weighing of factors holds true today; that Judge Lynn considered the comparative culpability as between Bruteyn and Bowden in crafting each defendant's sentence; and that the record belies Bruteyn's claims of rehabilitation. *See, e.g.*, Dkt. No. 291 at 24-30.

The Court agrees with the government. Bruteyn has not shown that his circumstances today should cause the Court to reconsider Judge Lynn's careful weighing of the § 3553(a) factors at his sentencing. The Court therefore concludes that the applicable § 3553(a) factors do not merit a sentencing reduction. That is, considering the nature and circumstances of Bruteyn's offense, releasing him today (effectively reducing his sentence to time served) is not consistent with the seriousness of that offense. Nor would such a reduction provide just punishment, afford adequate deterrence, promote respect for the law, or protect the public from further crimes.

## Conclusion

For these reasons, it is therefore **ORDERED** that Defendant Jeffrey Charles Bruteyn's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) [Dkt. No. 282] is **DENIED**.

**SO ORDERED** this 17th day of October 2022.


ADA BROWN
UNITED STATES DISTRICT JUDGE